Our third case this morning is number 23-2302 in Re Strongbridge Dublin. Mr. Millican. Good morning your honors, may it please the court. The inventor here identified a dangerous drug-drug interaction between dichlorophenamide and OAT1 substrates. He discovered that co-administration of these categories of drugs can cause toxic levels of the OAT1 substrate to accumulate in the body. Hence the claimed method, administer dichlorophenamide while also avoiding co-administration of methotrexate or famotidine, which are two commonly used OAT1 substrates. Can I just ask a general thing, I mean this isn't a label issue or whatever, I mean the FDA hasn't recognized the danger of these two, there's no, is there any labeling, is it, I mean that's a question, is there any labeling requirement with regard to the drug? There is your honor. After this study was performed and this drug-drug interaction was discovered, the FDA required amendments to the label of the branded dichlorophenamide drug and it now states that co-administration of dichlorophenamide and OAT1 substrates, quote, is not recommended and should be avoided. So looking at the claim language, it's hard to see who's the player here, but you've got the method claim, you've got a physician doing the prescribing, right?  So the claim says administering this, presumably that means the physician's going to, and while also avoiding concomitant, leaving aside the claim construction dispute, the same physician that's treating these people for paralysis, which is different than the other drug, what FDA requirements now has to advise the patient that they shouldn't take them concomitantly? So the FDA approved package insert states that the drug shouldn't be taken concomitantly, presumably the physician prescribing dichlorophenamide, if they had reason to think that their patient might be in need of methotrexate or famotidine, they might say, hey, this drug has an interaction with this category of drugs called OAT1 substrates, and so you shouldn't take famotidine, for example, as Pepsi. But would your claim, if it were allowed, allow you to, I mean, let's assume that before the FDA required and recognized that there was this inherent, this problem, all of these physicians for six years have been prescribing thousands and thousands of this drug that's not your invention anymore, whatever, at the same dosage, and have not been required, have not been telling them you're not allowed to do this because now the FDA says that there's a problem with people using it, all those guys are going to be tagged for infringement? I apologize, Your Honor, I'm not sure that I'm following the hypothetical. In the instance where... Who's the infringer? So it would be the physician, and potentially the patient might play some role in practicing this method also. For example, if the patient is the one avoiding taking Pepsi, I mean, that's an over-the-counter medication. If the physician is, or excuse me, if the patient is the actor that's saying, oh, I know I'm not supposed to take famotidine because I'm on Pepsid, that could be part of the avoiding step. I agree the physician's going to be involved because the physician is going to be the one who's prescribing the diclorfenamide. So every physician who's prescribed the, whatever it's called, and not told the patient, you can't take it with these other drugs, even though I have no idea whether you have the condition or not, is going to be charged with infringement? Well, if the physician is not saying anything about the, is not telling the patient to avoid the drugs, then the patient's probably not going to avoid the drugs unless they go and read the package insert themselves. And so in that instance, you wouldn't be avoiding the co-administration and you would not be infringing. But that's not, your claim is drafted much more broadly than that. That's the problem here. The claim is not drafted to a physician that says, if you're taking these other drugs, don't take this. The claim is drafted to require administration of diclorfenamide and then also avoiding Yeah, but you don't answer my question. The claim is not limited to a situation in which the physician says, don't take this if you're taking these other drugs like Pepsid. I agree. That is an example of avoiding that is not coextensive avoiding. That's the problem there. Well, respectfully, your honor, I don't I thought you were arguing that the administration requires a doctor's involvement. It does because this is a prescription drug. If it involves the doctor's involvement, the doctor is going to prescribe in the first place. And if a doctor knows that you're not supposed to be taking something else, the doctor is going to tell you not to take it. Presumably, yes, your honor. That's a claim construction issue. And that would be an example of avoiding. What happens if we disagree and we say the claim doesn't involve the doctor's involvement, it just involves whether or not somebody did or did not take. If you disagree with our claim construction and agree with the board that all the claim requires is merely that you administer diclorfenamide to a patient who happens not to be taking methotrexate or promododine, we still win because Sansoni, the prior art reference that is alleged to anticipate here, does not disclose anything about OAT1 substrates generally. As opposed to the theory of the one on two from the examiner's point of view, saying, well, if you're being told to take this, then you're not going to be taking anything else. That's the rationale. And my submission, your honor, is that is a legally incorrect way to look at the doctrine of inherency. Because? Because inherency requires that the limitation that's not expressly present in the prior art, which is here, avoiding administration of methotrexate or promododine, that limitation has to be the inevitable consequence. But the board didn't view this as an inherency thing. They didn't use the word inherency, right? Yes, they did, your honor. This was explicitly an inherency rejection, your honor. Where does the board say it's an inherency rejection? If you look at Appendix 5, this is the 405 decision, and towards the top of the page, the board is summarizing the examiner's. This is Appendix 5, page 5 of the appendix. This is the decision in the 405 case. The board is describing the examiner's reasoning and says, the examiner stated that Sansoni does not explicitly teach the claim limitation, it recites the limitation, but found that Sansoni does not disclose administration of promododine to patients, and thus the examiner determined that the claim limitation is met. In other words, the examiner found that Sansoni inherently teaches that the promododine was not concomitantly administered with dichlorphenamide by staying silent. Isn't the question here of how one of ordinary skill in the art would have read Sanson? And my understanding of the board, of the examiner's rationale, was that a person of ordinary skill would look at this and see that the D drug is being prescribed, nothing else, that there's no connection, no reason why the others would have been prescribed or used, and so we're going to presume one of ordinary skill in the art that in every case in Sanson, the only thing that happened was the prescription of the D drug, the main drug. And that's the rationale based on the examiner's view of one of ordinary skill in the art and the board. And they just finished. I apologize. They get to that stage, they say, well, we now have a premise for one of ordinary skill reading the Sanson reference to understand that the only thing that was happening in that study was the taking of the drug, I can't pronounce it with a D, and that the other was never taken, meaning anticipation. And they're treating it as though it's inherent because of that, for one reason, as opposed to saying it's just proof of. And then the burden under that, the prima facie case, as it comes into existence, and the burden shifts to your side to rebut it, and you're told the only way you can rebut it is to disprove it by showing that the other drug was always given, right? And that's my understanding of the rationale. I agree that that was the board's rationale. For us, is whether that's a sufficient, whether that was a sufficient reading of how one of ordinary skill and the other would have looked at this peculiar case with this one study of 60 or 70 or 80 patients. It is not sufficient, Your Honor. And I want to make two points, one legal and one factual. Well, is it a substantial evidence question here, then, on that? No, the board misapplied the law. The board misunderstood the standard for inherent anticipation. The board's reasoning was essentially that, look, it's likely that at least one of the Sansoni patients was not taking methotrexate or famotidine while being administered this diclofenamide. Okay, is your view that that is supported by substantial evidence or not? I believe there is no evidence in the record one way or another about whether the patients in Sansoni were or were not receiving these other drugs. We do know, and this is the factual... My question is, is that determination that it is likely that one or more of the patients in the study is not taking, let's say, pepsin, that that's not supported by substantial evidence? It's hard to say that it is because there is no evidence one way or another about it. We know that Sansoni excluded the patients from taking certain drugs. A lot of people who are taking pepsin, but certainly far fewer than the majority of the people, and the study here shows that only one person out of the 37 was suffering from heartburn, reflux. There seems to be pretty good evidence in which you could infer that one or more of these people was not taking pepsin. So we can accept for the sake of argument that it is likely that at least one patient in Sansoni was not taking methotrexate or famotidine. That does not impact our argument at all. Because our point is, the question that you ask when you're looking at inherent anticipation is not, was it likely or even extremely likely that this limitation was in the prior art? You're asking, is the missing element the inevitable result of what's expressly in the reference? I'll give you a case law analogy, if your honors don't mind. In the MEHL bi-file case, which is cited in the briefing, the claim there required removing hair with a laser, and one of the claim limitations was aligning the laser vertically over a hair follicle opening. The prior art reference was a manual for a laser that was used to remove tattoos. And this court found no inherent anticipation because they said this manual for the tattoo removal laser doesn't talk about hair follicles, and it doesn't disclose aligning the laser over a hair follicle open. It does teach aiming the laser at skin that has tattoo pigment on it, but quote, the record discloses no necessary relationship between the location of a tattoo and the location of hair follicles. Similarly here, there is no necessary relationship between the patients in Sansoni, the fact that they were taking diplorphinamide, and the requirement that they be also avoiding taking these two other drugs. You may be correct that the board's use of the term inherency is misnomer, but if the board's finding, factual finding, that it is likely that one or more of these people was not taking Pepsin, why isn't that in itself sufficient to show anticipation under the broad claim construction that the board adopted? Because anticipation requires that all the limitations have to be disclosed expressly or inherently in a single reference. There is no disclosure in Sansoni, and the government concedes this. There is no disclosure of anything about methotrexate, anything about famotidine, or anything about OAT1 substrates. And the reason there's no disclosure is no one knew about this drug-drug interaction until after the Sansoni study was performed. No one knew that there was a reason to avoid co-administration of these drugs. Can I ask you an infringement question? Certainly. If you were to get this patent, and let's say a million people take this drug, and 990,000 of them don't take the other drugs because they don't have the condition, are they infringing then? Do they constitute avoiding taking the drug? Do patients who don't take the other drug infringe it? Well, under the board's construction, yes. Under our construction, avoiding requires some sort of affirmative activity. If you don't need the others... Okay, let's assume we accept the board's construction independently. So if we're talking about the board's construction of this claim, does that mean that 990,000 of these people who never heard of this other drug because they don't have any conditions relating to this other drug are nonetheless infringing this claim? Under the board's construction, they would be avoiding... If they're not taking the other drug, they would be avoiding the other drug. Now, as I'm sure Your Honor knows... And therefore infringe it. The answer to my question is yes. If they are being administered dichlorphenamide at the frequency and dosage recited in the claim and are not taking the other drug, under the board's construction, yes, they would be practicing the claim. Now, there would be inducement questions because this would be a drug label case. Okay, under your construction, why not? Because avoidance requires some sort of course of conduct or affirmative activity to not encounter the thing that one is trying to avoid. So why don't you write that into the claim? I mean, there are other examples in this record of claims which are so limited. Why don't you write it that way? Because in our view, Your Honor, the word avoid is pretty clear on its face. It does not mean just not encounter by happenstance. It means you have to take some step. You could have amended the claims once you got the rejection from the examiner, right? We could have, but we don't think that... Why didn't you? Aren't I correct that in one of these two patents, at one stage, the Affirmative Act was in a claim? There was in one of the cases, in the 405 case, which is the one that has to do with famotidine, the claims were amended at one point to add that the patient in question is, quote, in need of treatment with famotidine. In the 405, but I thought in the 660 at some point, there was actually a claim that covered the doctor's administration. When you say that covered the doctor's administration? It involved active involvement by someone in making the administration. I believe that the main part of the claims has always just recited, administering diclorfenamide, and then the only... I'm not doing that. If I'm misremembering, I apologize, but there was the amendment in the famotidine case requiring that the patient be in need. Come back to my question. Why didn't you amend to make it clear that there had to be some sort of intent or explicit requirement in here instead of leaving a claim which is susceptible to the board's construction and creates a situation where anybody who administers the drug compound is a potential infringer? To answer your question directly, we didn't amend the claim because we didn't think we needed to. We think the word avoid is plain. If your honors agree with our claim construction, we're going to be bound by it. This is part of the prosecution history. We're not going to be able to go back and broaden the claim. Doctors probably don't read our cases. I'm sorry? Doctors probably don't read our cases. That's the problem. But even under your construction, if you're saying the FDA now requires what? What is the requirement to be a physician who's going to prescribe this drug also tell patients not to take the two together? Well, the FDA doesn't impose those sorts of requirements on physicians. But what the FDA did do is put in the drug label that administration of diclorfenamide without one substrate, quote, is not recommended and should be avoided. That language is now in the package insert. What a physician does with that information is up to the physician. So if it's in the insert, is everything, if you've got this claim, everything, every administration of this drug is going to be infringing because somewhere in the insert someone is told to avoid using it or not against using it. Every single sale of this drug is an infringing sale. Well, your honor, there would, I mentioned there would be arguments down the road about whether, as I'm sure your honor knows, usually the defendant here is a drug company, there would be arguments down the road about whether a drug company, including this package insert with their diclorfenamide product was inducing infringement by physicians and or patients. That hasn't been adjudicated yet because patent hasn't issued, but that would be the subject of litigation potentially in the future. Okay, we're out of time. We'll give you two minutes for rebuttal. Thank you, your honor. Ms. Caprahan. Good morning, your honors, and may it please the court. I have only two brief points to bring this morning. First, the board correctly construed the term to avoid concomitant administration to mean that the patient is not being administered familiarly. Methadone or methotrexate while they're receiving treatment for periodic paralysis. And that construction is supported by the intrinsic record here, the language of the claims, as well as how this invention is described in the specification. Okay, point two, I assume, is... Point two is that substantial evidence supports the examiner's and the board's determination here that a skilled artisan reading the Sansoni clinical trial would understand that these other drugs were not being co-administered because that clinical trial is directed to treating patients who have periodic paralysis. But it also, but the sense of the reference also excludes, says you shouldn't do it with other stuff, take this with other drugs. Others, is there a reason to believe those other drugs are taken by an overlapping subset of patients that have paralysis? Well, what the examiner and the board both found is that famadidine and methotrexate are prescribed for conditions that are unrelated to periodic paralysis. And what, and that's my question, what about the, I don't know, what about the other drugs that are explicitly told in the reference you should avoid the use? Sansoni does, yes, Sansoni does describe other exclusion criteria for these patients, but that does not affect the fact that famadidine and methotrexate are also indicated for other indications that are not included or do not overlap with that of periodic paralysis. My question is, if the drugs that are explicitly excluded from concomitant use in Sansoni, if there's a greater relationship between why those other drugs are administered, is it more likely that the patients are going to be taking those two drugs and that's why he needed to exclude them? Perhaps. I mean, those indications may have been, may have had some relationship to periodic paralysis, and perhaps that is the reason those were specifically listed. Okay, so how do we get to, I mean, our cases, maybe there's a basis, and I know the board tried to distinguish Novartis in the cases, and you do too, but the language in the case is about it necessarily is, or it explicitly, inherently, you know, describing inherency. How does this rise to the level of inherency when we've just got silence? So here what the board and examiner both found is that it is necessarily true that at least one patient in Sansoni was not taking famadidine or methotrexate. Can I just stop you for a second? When you say necessarily true, does that, this is an anticipation rejection by examiner and affirmed by the board. Is this an anticipation by inherency or anticipation in fact based on a factual assessment of Sanson? Which is it? So the board did say that this is anticipation based on inherency because it does not say, the examiner said that a skilled artisan would accept that there would be no teaching. So I think the examiner was a little more explicit. The examiner was saying it would always happen. The examiner was saying it would always happen. That means inherence. That means anticipation by inherence. Inherence, correct?  So I'm just asking whether there's a, whether, how should we be viewing this case? We should be, you should be reviewing this case as an inherency case based on anticipation because Sanson's teachings would make it clear to one of skilled in the art that a patient was necessarily not taking these other drugs. I'm confused now because I thought the board very clearly said we're just looking for one person. That's all we need. That is correct. We're just looking for one person. That it's inherent in every use. It's just all we need is one person. And it's likely that there's one person, not that there's always one person. So the board did say that at least one person was not taking. It's likely. And as I understand Mr. Milliken, he comes close to conceding that it is likely that there is at least one person. But I don't see that the evidence supports the necessarily, that is 100% likelihood that there is one person. That's the difficulty. So it might be helpful to look. Can we look at the board decision and see whether this at least one is the holding or whether that's an observation based on adopting the examiner's theory of complete inherency. So if we first look at the 405 case, we can look at, say, page APPX10. Let's turn to that page. So looking at the 405? The 405, which is the hematidine case. What page of the appendix? APPX10. So we're looking at the examiner's? We're looking at the board's decision. Board decision at APPX456? And in that case, in this case, the board indicated that when we weigh the totality of the evidence, we conclude that a preponderance of this evidence supports the examiner's determination that Sansone is anticipatory to the claim. And what the board explained is that 36 subjects in the trial were administered dichlorophenamide. And it is necessary that only one of these patients did not take hematidine to be anticipatory to the claim. And I think it might be also helpful to note that in that case, in this clinical trial, only one patient had a condition of gastrointestinal distress. And so if any patient was taking hematidine, it would be that one patient. But the 35 other subjects were not taking it. But I don't understand this paragraph at all. So it says, the board acknowledges, it is necessary that only one of these patients did not take whatever to be anticipatory to the claim. And then they turn to appellant did not provide evidence. Is that kind of a shifting of the burden there? But they do describe that. They have a paradigm. And they say that under the examination, the examiner says this, and then the burden of production,  shifts to the appellant to come up with, to disprove that. So what the board was explaining here is that the examiner made its prima facie case. It met its prima facie burden to show that substantial evidence supported the fact that a skilled artisan reading Sansoni would accept that by not listing famadidine or methotrexate, none of the patients were taking those drugs. So that was the initial prima facie case. If you look at the prior page, A9, and the last sentence on the page, they make clear, the board makes clear, that their findings, it's more likely than not that at least one patient is not taking this. That's the standard they're applying. Sorry, where did you see more likely than not? It's thus whether. That's the thus whether sentence at the bottom. Thus whether the evidence makes clear that descriptive matter is necessarily present is determined by the preponderance of the evidence more likely than not in the record. What they're saying is it's more likely than not that at least one person is not taking the other drug. I think what the board is saying there is that the more likely than not relates to whether the preponderance of the evidence shows that. They're not saying that it's more likely than not that one person didn't take it. They're saying that there is enough evidence there to show that at least one person was necessarily not taking Fematidine or Methotrexate in addition to Dichlorophenamide. I don't understand that. It's like a two-step. They've got a two-step. Did somebody say it's as if if the examiner said I believe conclusively that one person did not take it. Yes. And then they say well we're applying preponderance of the evidence to that finding and we think it's more likely or not that that finding is correct. But what I'm missing is the examiner actually say that? Did he say it's necessarily it's 100% clear that there's a person and then they've applied the preponderance of evidence? Well the examiner let's turn to the Methotrexate example because there is a section of the examiner's answer in the record here. And at 615 what the examiner explains this is at the bottom half of the page. 615. It's the 660. Sorry. Yes. 615.  And here what the examiner explains is that because this is a detailed experimental procedure in Sansoni it's a clinical trial that without mentioning the co-administration of these other drugs the Sansone inherent like Sansone teaches that that one is inherently avoiding the co-administration of these other drugs. And so that is what the finding that was made by the examiner. Wait so you're saying it says so in the instant case it will be universally accepted that the administration of Methotrexate is not necessarily present when administering the law. And that's it? That's the finding you're talking about? Yes and that is because this is a clinical trial directed to treating patients with periodic paralysis. And the absence of any mention of Methotrexate or Formatidine is indicative that these patients were necessarily not taking those drugs in combination with Dichlorophenamide. So silence does it all for them? Silence does it all. Silence I would say silence in combination that when a skill in the art would understand that these drugs are not administered for the condition that is that these patients are being treated for. And that shifts that's the prima facie case? Correct that's the prima facie case. And that's the way both of these patents were treated at the examiner level? That is correct. As a prima facie matter and that's the board's decision greeted that and decided it on that basis didn't they? That is correct. And the burden then shifted to Strongbridge to show that there would have been some sort of relationship between those patients who were being treated for periodic paralysis and those conditions that were being treated by Formatidine and Methotrexate. But Strongbridge never showed any of such a relationship. How do we decide whether or not the prima facie case was properly established? Is that a fact question? That is a fact question. And here substantial evidence supports that. Due to Sandstone's silence as well as the fact that one of Skill and the Art would understand that these drugs are not administered for periodic paralysis. Silence plus the lack of any relationship?  And is this, are we looking at this as how one of Skill and the Art would have looked at Sandstone to create the prima facie case? Or is this simply the prima facie case being created in the examiner's mind? This is the prima facie case based on what one of Skill and the Art would have understood based on Sandstone's teachings. And that is what the examiner also weighed in determining that the prima facie case here was met. I'm not sure that this is correctly termed an inherency situation. Under the claim construction it seems to me that it doesn't necessarily have to be that there was somebody in the study who was not taking the other drugs. It seems to me that it's only necessary to show that it's likely, more likely than not, that at least one person is not taking these other drugs, which does not fit easily into the inherency paradigm. I think the examiner was here, and the examiner and the board were relying on inherency because it does not explicitly say that these patients were not taking methotrexate. The point is that under the claim construction it doesn't have to be explicit. That's the whole point of the claim construction. All it requires is that it be there, not be there. Right. And the claim construction simply says that these patients are not taking these other drugs. And had Sandstone explicitly said that these patients were not taking these other drugs, then perhaps that would have been an express anticipation. But because it was silent, it is inherent that these patients were not taking these other drugs. I understand that it's awkward, that the phraseology is awkward because this is a negative limitation, but that is the finding that was made by the examiner and the board. That here, because one could, one of skill and the art would read the Sansoni teaching as... Well, the problem that I'm having is if take a cohort of 37 patients. I mean, there could be. It is possible that there could be a situation in which every one of them is taking Pepsin. It's possible. Not very likely, but it's possible. But if the proof is that it has to be 100% of the time that each and every one of those patients is not, or 100% of the time that one of the patients is not taking Pepsin, I'm not sure that that finding would be supported by the record here. Well, I would dispute that. Only because in the Sansoni clinical trial, only one patient out of those 36 patients was reported as having gastrointestinal distress. And so in that case, only one patient would be taking Pepsin. These other patients had reported no gastrointestinal distress. So the other patients were necessarily not taking. I think that a board finding that it's likely, that last sentence on page nine, that at least one of them is not taking Pepsin is supported by substantial evidence. That's true. But I'm not sure that a board finding that in 100% of the cases, there's always one person who's not taking Pepsin is supported by substantial evidence. That's the problem I'm having. I think based on the evidence that was before the board and the examiner, because at least 35 of the patients did not report any gastrointestinal distress, at least then one of those patients was not taking famatidine. And that is what the board and examiner based its decision on. That there is at least one patient in these studies that was not taking famatidine or methotrexate in combination with dichlorophenamide to treat periodic paralysis. Because there's no relationship between those drugs. OK. All right. We're out of time, I think. If there are no further questions, we ask that you form a decision. OK. Mr. Milliken. Thank you, Your Honors. Judge Dyke, I agree with you. This case does not fit well into an inherency paradigm. And that's kind of the point. As Judge Bryson put it in the Pernix case that we relied on in briefs, a modification of a method of treatment is not a necessarily present property in a prior art reference that doesn't say anything about that modification. Let me ask you, what if Sensoni had an appendix? And it was a long while ago, so an appendix at least describes five of the patients randomly. And one of those patients happened to check the box, which I'm not taking any other drugs. In that case, that would be an express anticipation, I think, if that were the pattern. So you would want for that to be sufficient. So why isn't it sufficient under a preponderance standard that the board... Why are we supposed to say there's not substantial evidence to support the board's conclusion that given what it had about the differences of drugs and all this other stuff, that they were to accept that one patient was not doing it in the absence of your coming forward with any information given the thing? It's like, you know, you can have a claim that says that you're taking a certain drug and you shouldn't take it with Cheerios. I mean, this is just, you know, there's some things that just don't come out in the prior art. But why on our standard of review can we not accept that the board said a person skilled in the art would have thought that at least one patient would have done this? Because that is precisely the kind of possibilities and probabilities reasoning that is foreclosed by this court's inherency cases. The crux of the board's reasoning, and Judge Dyke, I think you share this view, is it is likely that at least one patient in the trial wasn't taking methotrexate or famotidine. We'll accept that for the sake of argument. Our point is that that is not enough for inherent anticipation. You have to show not just that it is likely that the missing limitation is in the prior art, or even very likely. You have to show that it is the inevitable consequence of what is expressly in the prior art. That showing has not been made here. The examiner and the board did not even try to make that showing. Instead, they merely relied on the reference's silence. And silence is not disclosure. It's not express disclosure. It's not inherent disclosure. I see that I'm over my time. Well, what about silence if it's attached? Your friend said there was some evidence in the record that they all had to indicate what other medicines they were taking, what other conditions they had. And so every one of the 38 people in the study said we don't have this condition. So to the extent there's evidence related to that point in the record here, it supports us, not them, because Sansoni has exclusion criteria that say patients taking these categories of drugs were excluded from this study. I know, but maybe that's because certain drugs, it's likely that both patients would be taken. But if a drug, it's not likely, what if the patients all said we don't have a gastro condition that we're not taking any medication to treat this condition? That's sufficient, right? If the, that sounds to me like more of an obviousness argument. If the argument were, we know that famotidine is only used to treat, say, this category of gastro conditions. We know that all of the patients in the study said we don't have any of these gastro conditions. I think you're having to make some logical inferences that would be more at home in an obviousness analysis than an anticipation one. Maybe you could get there through inherency if you found that a skilled artisan would conclude necessarily it is inevitable that these patients who didn't have these conditions would not have been taking famotidine. We might have a different case. Maybe that, you could sustain an inherency rejection on that fact pattern, but that's not the fact pattern that we have here. On that claim construction issue, when I asked you whether or not one of these patents had been met, at some stage the game had solved the problem of active involvement. Yes, Your Honor. And I was looking at Appendix 75. I think this is talking, it's about the 606, and it talks about a situation in which also provided was a method for administering the main drug, but also informing the subject or a medical care worker that a co-administration of an OATI substrate is not recommended. Yes, so this is in the specification, and yes, there are examples of methods in the specification. But it said also, provided as a method, so it suggested to me that somewhere it was at least contemplating an active involvement by the physician. I couldn't tell because the whole file history wasn't presented in either one of these cases, but it looked to me like at some stage there had actually been a claim. I understand, Your Honor. So this is an example method that's provided in the specification. This is not a method that was ever presented as a claim, as in, you know, this is what we're trying to get a patent on. Okay. Thank you. Thank you, Counselor Casey-Subin.